McKinney, J.
delivered the opinion of the court.
It appears from the pleadings and proof in this cause, that the complainant was accommodation indorser of a note made by William Summerhill, Lawrence Sypert and Robert Sypert, for $375 25, upon which suit was brought on the 20th day of January, 1845, in the circuit court ,of Wilson county, against the makers, and complainant, as indorser, jointly: Summerhill, without consulting the complainant, and without his knowledge, retained an attorney to file a plea merely for delay. Relying on the ability of the makers, or some of them, complainant felt no apprehension for his safety, and did not employ an attorney, nor authorize any other person to do so, on his behalf. At the September term, 1845, of said court, a judgment was rendered against all the defendants for $389 38, and costs of suit. To obtain further delay, an appeal was prayed to the Supreme court, at the instance of Summerhill and R. B. Sypert, on behalf of all the defendants; this was done in the absence of complainant, without his knowledge, and not only without his authority, but against his wishes: And in like manner, his name was signed to the appeal bond, by the attorney of Summerhill, without his knowledge, and wholly without authority from him, either express, or implied. By the procurement of Summerhill or Sypert, or one of them, the defendant, Anderson, became surety in the bond for the prosecution of the appeal. In his answer, Anderson states, that on the last night of the court, at a late hour, Summerhill called on him, after he had retired to bed, and informed him that judgment had been rendered, and that he and Sypert desired to prosecute an appeal to the supreme court, and requested *492 him to be security; and to induce him to do so, informed him that all the defendants would be liable before he, Anderson, could be subjected to the satisfaction of the judgment: the affirmance of which in the supreme court, was expected as a matter of course; that in assenting to become security, he especially looked to the ability of the complainants for his indemnity ; and would not have been security if he had known that the complainant c^d not wish an appeal; but he knew of no objection on the part of complainant, and executed the bond after complainant’s name had been signed to it by the attorney of the other defendants; the attorney states, that Anderson was informed before executing the bond, that the complainant and all the other parties would be first liable to the satisfaction of the judgment of the supreme court. The-clerk of the court, however, states, that when the bond was executed, or just before, Anderson said to R. B. Sypert, that he was not going security for Summerhill, but for him, Sypert. Three other witnesses state, that Anderson afterwards said, he had executed the bond as security for Sypert, and no other person. At the time of the rendition of the judgment in the circuit court, R. B. Sypert was the owner, as he states in his deposit tion, of seven slaves, worth, as he supposes, $2000. These slaves were run off about the time, or shortly after the affirmance of said judgment in the supreme court.
An execution issued from the supreme court, and was levied on the property of the complainant, there being no property to be found of the other parties to the judgment, except Anderson’s, out of which to satisfy the same: and the complainant brings this bill to enjoin the plaintiff in said judgment from enforcing satisfaction from him; and to have the defendant Anderson subjected, in the first instance at least, to the satisfaction of the same. Upon these facts, is the complainant entitled to relief in equity? We think .he is: — 1st. because in the view of a court of chancery, he was not a party to the judg *493 ment in the supreme court, which is sought to be enforced against him. He did not join in the appeal; it was prosecuted without his knowledge or consent; the other defendants had no right, or authority by law, to join him in the appeal, without his assent; and their doing so, was a fraud upon his rights. The signing of his name to the bond was a nullity; the person by whom it was signed was not his attorney; no such relation as that of client and attorney had ever existed between them; and if it had, a retainer merely for the purpose of defending the suit in the circuit court, would have conferred no authority upon the attorney to prosecute an appeal to the supreme court, much less to sign an appeal bond in the name of the complainant; this authority in his absence, could only have been exercised by virtue of an express power conferred by an ^instrumentunder seal. It was the business of the defendant, before incurring liability, to have inquired into the authority of the other parties to prosecute an appeal in behalf of the complainant, or to sign his name in the appeal bond, in his absence. He is presumed to have known that they had no right or power to do so,- and if misled by their opinions, he must abide the consequences. He voluntarily undertook as the surety of Sypert, not of the complainant, and his liability rests upon the ground of positive contract.
But upon another ground, we think the complainant is entitled to relief. It is obvious, that, but for the act of the defendant in becoming the surety of Sypert in the appeal bond, no appeal would have been prosecuted, and the judgment might have been enforced against the persons justly liable to its satisfaction. By his interference, without the knowledge and against the wishes of the complainant, he enabled Sypert to run oS his slaves; in consequence of which a loss must now fall on one or the other of the parties to this cause; and the familiar principle of equity in such cases is, that it will be cast upon him by whose act it has been occasioned. And it may *494 be remembered, that the defendant has no claim to the favor of a court of chancery, on the score of his being a surety only, over the complainant, who is merely an accommodation indor-ser; in this respect they stand on equal footing.
We affirm the decree of the chancellor, with costs.